

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID R. DONALDSON and | ) | Case No.: 16-14126-JDW |
| CYNTHIA A. DONALDSON, | ) | |
| | ) | |
| Debtors. | ) | Chapter: 13 |

ORDER OVERRULING OBJECTION TO CLAIM (DKT. # 110)

This matter came before the Court for hearing on February 8, 2018, on the Objection to Claim of the Internal Revenue Service (the "Objection")(Dkt. # 110) filed by debtors Dr. David R. Donaldson and Cynthia A. Donaldson. The Donaldsons appeared at the hearing, along with their attorney, Robert Gambrell. Samuel Wright, Assistant United States Attorney, appeared on behalf of the Internal Revenue Service (the "IRS").

In the Objection, the Donaldsons seek a reallocation of funds received prepetition by the IRS that were applied to non-debtor Impact Missions,

1

Inc.'s ("IMI") prepetition tax obligations. The IRS has deemed Dr. Donaldson a "responsible person" who is liable for IMI's failure to pay certain trust fund taxes and assessed a Trust Fund Recovery Penalty ("TFRP") against him.[1] Dr. Donaldson contends that all of the funds received should be applied to these trust fund taxes, rather than split between the trust fund taxes and other taxes for which he has no personal liability. Dr. Donaldson testified at the hearing, as did Brian Redden, former IMI chairman, Wes Edwards, a former IMI board member, and Terry Griffith, IMI's former CPA and consultant. At the conclusion of the hearing, the Court requested additional briefing from the parties. All briefs have now been filed (Dkt. # 160, 161, 163, and 164).

The Court has considered the Objection, the IRS's response, the briefs, the arguments of counsel, the evidence, and the applicable law. For the reasons set forth below, the Objection is due to be overruled.

## I.   JURISDICTION

This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 6, 1984. The consideration of an objection to a proof of claim is a core proceeding arising under Title 11 of

---

[1] Responsible person liability is governed by 26 U.S.C. § 6672 ("§ 6672").

the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B), (I), and (O). The threshold issue in the Court's consideration of the Objection, however, is whether the Court has jurisdiction to order the IRS to reallocate payments it received prepetition for a non-debtor's tax liability.

## II.   FINDINGS OF FACT[2]

IMI was a non-profit charity whose primary purpose was to provide services to abused and neglected children through 24-hour residential homes and protective custody. Dr. Donaldson served on IMI's Board of Directors from 1999 until he resigned on September 10, 2004. During the tax periods at issue, Dr. Donaldson also served as the President and Chief Executive Officer of IMI. Beginning in 2012 and lasting until it ceased operations and dissolved in 2015, IMI suffered financial difficulties due to the loss of multiple grants and other sources of funding. During this time, IMI fell behind on many of its obligations, including federal taxes.

Beginning in 2012, IMI accumulated significant trust fund tax liabilities due to IMI's failure to withhold, file returns, and pay required quarterly trust fund taxes related to employee payroll.[3] The trust fund tax liabilities continued to accrue through 2013 and 2014 due to IMI's continued

---

[2] To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

[3] IMI also became delinquent on its non-trust fund federal taxes. Those taxes are not at issue here.

3

failure to account for and remit payroll withholding taxes. Dr. Donaldson testified that he first became aware of IMI's trust fund tax delinquency in the first quarter of 2013. Despite Dr. Donaldson's knowledge of the tax arrearage, IMI continued to fail to pay its ongoing trust fund tax obligations. The liabilities at issue are the TFRP assessments issued against Dr. Donaldson for all four quarters of 2013 and the first quarter of 2014, while he was president and CEO of IMI.[4]

Although IMI suffered from a lack of cash flow, it did have three assets that Dr. Donaldson believed were sufficient to satisfy all of IMI's past due and continuing tax liabilities: two parcels of real property and a contingent claim filed with the BP Deepwater Horizon Settlement Claims Administrator (the "BP Claim," and together with the two parcels of real property, the "Contingent Assets"). Because he chose to rely on the future liquidation of the Contingent Assets, after 2012, Dr. Donaldson never used, or suggested that IMI use, other funds, such as operating funds, to pay current or past due amounts owed to the IRS. Even after Dr. Donaldson became aware that the withholding taxes were not being paid, he testified that he continued to pay IMI's other operating expenses with funds that could have been used to pay the IRS.

---

[4] The original TRFP assessment against Dr. Donaldson also included the third and fourth quarter of 2012. Those liabilities were satisfied by the application of the funds received from the BP settlement, discussed below.

4

Dr. Donaldson testified that he believed that the Contingent Assets had sufficient equity to fully pay IMI's past due and accruing tax liabilities. To that end, IMI's former CPA, Terry Griffith, testified that he facilitated a meeting at his office on June 19, 2014, between Cathy Aders, an IRS Revenue Agent, and Dr. Donaldson to discuss the past due taxes and IMI's plans to use the Contingent Assets to pay those taxes. At the meeting, Dr. Donaldson told Ms. Aders that IMI had submitted the BP Claim in 2013 and that IMI intended to use the proceeds of that claim (the "BP Funds"), along with excess proceeds from the sale of the real property, to pay IMI's past due tax obligations. Mr. Griffith testified that IMI intended that the BP Funds be designated as a voluntary payment to the IRS to be used first for the satisfaction of IMI's past due payroll tax obligations. Mr. Griffith further testified that he assisted Dr. Donaldson and the IMI Board in drafting a resolution intended to memorialize the meeting and IMI's plan to pay its past due tax obligations. Dr. Donaldson testified that he was instrumental in passing the resolution and that he specifically included a provision to attempt to direct the application of the BP Funds as a voluntary payment to the IRS. This was an internal IMI document. The IRS was not a party to any agreement to designate the BP Funds in this manner.

Due to the past-due taxes, the IRS issued a notice of levy on the BP Claim in February 2015 (the "Notice of Levy"). The Notice of Levy effectively

gave the IRS a nonconsensual lien on the BP Funds and was issued prior to the claims administrator's final decision on the BP Claim. Dr. Donaldson contends that the IRS issued the Notice of Levy at his insistence, but even if true, his permission was not required. Neither IMI nor Dr. Donaldson had any basis to oppose the IRS's levy on the BP Claim.

The BP Funds were received by the IRS in September 2016 with a designation on the settlement check that the funds be applied to the trust fund taxes. The IRS ignored this designation and instead applied the funds to both trust fund and non-trust fund tax obligations of IMI. Dr. Donaldson received a substantial benefit from the IRS's application of the BP Funds, as the funds were partially applied to his TRFP liability and resulted in a decrease of that liability. The IRS received no funds from the liquidation of the two parcels of real property, which were foreclosed upon by prior lienholders.

The Donaldsons filed their chapter 13 bankruptcy petition on November 22, 2016 (Dkt. # 1). The IRS timely filed its proof of claim on May 26, 2017 (Claim # 10) in the amount of $87,564.09, consisting of Dr. Donaldson's TFRP liability for all four quarters of 2013 and the first quarter of 2014. On August 22, 2017, the Donaldsons filed the Objection seeking a reallocation of the BP Funds solely to trust fund taxes for which Dr. Donaldson has TFRP liability. The Donaldsons contend that IMI made a

6

"voluntary payment" designation of the BP Funds, and that, therefore, the IRS should have applied all of the BP Funds to periods for which Dr. Donaldson was assessed a TFRP as a responsible person. The IRS argues that the Donaldsons' Objection should be overruled, first on jurisdictional grounds, but also on substantive grounds.

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction

The threshold issue in this case is whether the Court has the authority to order the reallocation of prepetition payments to the IRS made by a non-debtor entity. While an objection to a proof of claim is, by definition, a core proceeding under 28 U.S.C. § 157(b)(2)(B), the relief requested by the Debtors is not. Jurisdiction over this discrete issue, if it exists, would be based on the "related-to" prong of 28 U.S.C. § 1334(b) or under section 505(a)(1) of the Bankruptcy Code[5], which confers bankruptcy court jurisdiction over certain tax determinations.

Section 505(a)(1) of the Bankruptcy Code provides that, with certain exceptions, "the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before

---

[5] All statutory references are to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise noted.

7

and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Despite the broad language of this statute, its jurisdictional grant is not unlimited.

The Fifth Circuit has agreed with other circuits that have addressed this question in holding that § 505 grants a bankruptcy court jurisdiction to determine the tax liabilities of the debtor and the estate, but not third parties. Internal Revenue Serv. v. Prescription Home Health Care, Inc. (In re Prescription Home Health Care, Inc.), 316 F.3d 542, 549 (5th Cir. 2002); In re Quattrone Accountants, 895 F.2d 921, 925-26 (3d Cir. 1990); Brandt-Airflex Corp. v. Long Island Trust Co., N.A. (In re Brandt-Airflex Corp.), 843 F.2d 90, 96 (2d Cir. 1988); U.S. v. Huckabee Auto Co., 783 F.2d 1546, 1549 (11th Cir. 1986). Thus, while the Court has jurisdiction under § 505 to determine Dr. Donaldson's tax liability under § 6672, it does not have jurisdiction under § 505 to re-allocate prepetition tax payments received as a result of the levy on IMI's assets, because the taxpayer, IMI, is not a debtor here.

Having determined that the Court does not have § 505 jurisdiction, the Court now must determine whether it has jurisdiction to order the reallocation under the general bankruptcy jurisdiction statute, 28 U.S.C. § 1334. That statute provides that a bankruptcy court has jurisdiction to

8

determine civil matters that are "related to" a bankruptcy proceeding.[6] 28 U.S.C. § 1334. The U.S. Supreme Court has broadly held that a proceeding is "related to" a bankruptcy proceeding when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Celotex Corp. v. Edwards, 514 U.S. 300, 307-08 (1995). Again, despite this broad definition of "related to" jurisdiction, it also has its limits.

In Quattrone Accountants, the Third Circuit held that the bankruptcy court did not have jurisdiction to determine a non-debtor's liability for a TFRP under 28 U.S.C. § 1334, because the determination would not have any effect on the debtor's estate. 895 F.2d at 925-26. The Fifth Circuit went a step further, explaining that the general "related to" jurisdiction of [28 U.S.C.] § 1334(b) "does not circumvent the specific grant of jurisdiction to the bankruptcy court to determine tax liabilities [under 11 U.S.C. § 505]," because the "more specific statute controls over a more general one." Prescription Home Health Care, 316 F.3d at 548. As such, third-party tax matters cannot be adjudicated by the bankruptcy court even if they could conceivably affect the debtor's estate, as "such a reading would render superfluous § 505's grant of jurisdiction to determine the tax liabilities of *the debtor* or *the estate*." Id. (emphasis in original).

---

[6] All other jurisdictional bases in § 1334 are clearly inapplicable.

The Debtors argue that § 105 of the Bankruptcy Code provides the authority for their requested reallocation.  Section 105 grants bankruptcy court broad powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code." 11 U.S.C. § 105.  The Bankruptcy Code does implicitly authorize bankruptcy courts to approve reorganization plans designating tax payments as either trust or non-trust fund, based on the bankruptcy courts' authority to approve reorganization plans under §§ 1123(b)(5) and 1129 of the Bankruptcy Code and § 105.  U.S. v. Energy Resources Co., Inc., 495 U.S. 545 (1999). That said, "Energy Resources . . . addressed only the *allocation of payments* in a reorganization plan, specifically whether they could be first allocated to trust fund liability. . . . Energy Resources did not discuss a bankruptcy court's *jurisdiction over non-debtor tax liabilities.*  Nothing in Energy Resources  suggests that bankruptcy courts have jurisdiction to determine the tax liabilities of non-debtors."  Prescription Home Health Care, 316 F.3d at 549 (emphasis in original).  Energy Resources does not reach cases where a third party would benefit. Kaplan, 104 F.3d 589, 597 (3d Cir. 1997).  Furthermore, § 105 does not permit the Court to circumvent the other, more particular sections of the Bankruptcy Code, nor does it expand a bankruptcy court's jurisdiction beyond the scope of  28 U.S.C. § 1334 or § 505.  Law v. Siegel, 571 U.S. 415 (2014) (holding that § 105 "confers authority to 'carry out' the provisions of the Code,

10

but it is quite impossible to do that by taking action the Code prohibits"). Accordingly, the Court does not have the authority to order the IRS to reallocate the prepetition application of the BP Funds to IMI's various liabilities.

### B. Responsible Person Liability

While this Court does not have jurisdiction over IMI's tax issues, the determination of Dr. Donaldson's TFRP liability falls within the Court's jurisdiction. In order for Dr. Donaldson to be liable for IMI's trust fund taxes, he must be a "responsible person" as that term is defined in the federal tax code, and the failure to pay the trust fund taxes must have been willful. 26 U.S.C. § 6672.

The federal tax code provides that certain taxes, such as employee withholding taxes required to be deducted by employers from the wages paid to employees, "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). The withheld funds are therefore referred to as "trust fund" taxes. See Slodov v. U.S., 436 U.S. 238, 243 (1978). To ensure that these taxes are collected, the IRS may assess a 100% penalty (the TRFP) against any person who willfully fails to collect, truthfully account for, and pay over trust fund taxes. 26 U.S.C. § 6672. The person upon whom such a duty is imposed is commonly referred to as a "responsible person."

Courts have generally interpreted "responsible persons" to mean individuals with control over corporate payments, which can result in numerous individuals or entities being responsible for the same unpaid taxes. See Commonwealth Nat'l Bank of Dallas v. U.S., 665 F.2d 743, 757 (5th Cir. 1982). The Fifth Circuit takes a broad view of who is a "responsible person" under this statute. Id. at 751; Logal v. U.S., 195 F.3d 229, 232 (5th Cir. 1999) (citing Barnett v. Internal Revenue Serv., 988 F.2d 1449, 1454 (5th Cir. 1993). Responsible person liability is "separate and distinct" from the employer's liability, and "the IRS is *not* required to exhaust its remedies against the delinquent employer" before seeking to collect the revenue from a responsible person. Prescription Home Health Care, 316 F.3d at 544-45 (emphasis in original).

Dr. Donaldson concedes that he is a "responsible person" for purposes of § 6672 liability (Dkt. # 161, p. 10). He argues that he is nevertheless not liable for the TFRP for two reasons: (1) other, perhaps more culpable, responsible persons also failed to pay the trust fund taxes, and (2) his nonpayment was not willful.

### 1. Other Responsible Persons

Dr. Donaldson contends that after his resignation from IMI, new officers or board members had the ability to direct payment of the past due trust fund taxes. He points to cases holding that if a newly responsible

person otherwise uses funds that were available to pay other creditors and not the IRS, then that person may also be held liable for the TFRP to the extent the company had unencumbered funds available to pay the trust fund taxes at the time the new person assumed control. Denbo v. U.S., 988 F.2d 1029 (10th Cir. 1993). That is true. He further suggests that these subsequent responsible persons become solely liable for the unpaid taxes. Denbo does not support that argument.

Denbo holds that a debtor may have responsible person liability for unpaid taxes if he was a responsible person either at the time the taxes initially went unpaid or at the time the government sought to collect the taxes. 988 F.2d at 1035. Simply because other people in the IMI organization may also be liable as responsible persons does not relieve Dr. Donaldson of his own liability under § 6672. Howard v. U.S., 711 F.2d 729, 735 (5th Cir. 1983). Furthermore, the fact that the IRS has not yet sought collection from other "responsible persons" likewise does not relieve Dr. Donaldson of his liability for the unpaid taxes under § 6672, as the IRS is not required to first pursue other responsible persons or the entity itself. Id.

### 2. Willfulness

Dr. Donaldson argues that although he is a "responsible person," he is not liable for the TFRP payments, because "reasonable cause may excuse the the failure to collect, account for, or pay over withholding taxes." Mazo v.

U.S., 591 F.2d 1151, 1155 (5th Cir. 1979). The burden of proving lack of willfulness is on the taxpayer. Id. Willfulness may be found based upon a voluntary, conscious, and intentional act, such as payment of other creditors in preference to the IRS. Id.; Logal, 195 F.3d at 233. Bad motive or evil intent need not be shown; the willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the IRS. Mazo, 591 F.2d at 1155. Conduct such as failing to investigate or correct mismanagement after being notified that withholding taxes have not been remitted constitutes willfulness. Id. "A responsible person acts willfully if he knows the taxes are due but uses corporate funds to pay other creditors." Logal, 195 F.3d at 232. "A responsible person who learns of the underpayment of taxes must use later-acquired unencumbered funds to pay the taxes; failure to do so constitutes willfulness." Id.

The Fifth Circuit has "consistently held that the reasonable cause defense to a § 6672 action is exceedingly limited." Logal, 195 F.3d at 233. In fact, the Fifth Circuit noted that though it has "recognized conceptually that a reasonable cause may militate against a finding of willfulness," no taxpayer had proven reasonable cause up to that point. Id. (citing Bowen v. U.S., 836 F.2d 965, 968 (1988)).

No reasonable cause excuses Dr. Donaldson's willful nonpayment. Dr. Donaldson testified that he knew of IMI's past due 2012 liabilities in the first quarter of 2013. He further testified that he pursued other sources of funding, and contends that in doing so, he was taking all reasonable action to ensure that the taxes would be paid. The Court disagrees. The testimony and evidence presented at trial reveal that even though Dr. Donaldson knew of the past-due 2012 trust fund taxes, IMI continued to fail to pay its current trust fund obligations. The taxes at issue here are those assessed against Dr. Donaldson for all of 2013 and the first quarter of 2014 – all of which accrued after he became aware IMI was not collecting and paying trust fund taxes. While it is true that IMI lost several sources of funding during 2013, Dr. Donaldson testified that IMI continued to receive other funds, which were used to fund operations and make payroll obligations. Dr. Donaldson testified that he paid other bills with funds that could have been used to pay the IRS trust fund taxes. Even though IMI was paying its employees and other operating expenses, it not only failed to pay the arrearage, it failed to pay the ongoing withholding taxes as they came due.

Dr. Donaldson did not seek to defraud the IRS and had no evil intent. It is clear from Dr. Donaldson's testimony that he believed that IMI would receive a large sum of money from the liquidation of the Contingent Assets which would be sufficient to cover all of IMI's past due obligations to the IRS.

Equally clear is that the sale of the property and the BP Funds did not result in sufficient proceeds to pay all the trust fund taxes. Dr. Donaldson's gamble that these Contingent Assets would cover the past due taxes does not relieve him of his liability under § 6672 for the shortfall. Dr. Donaldson's argument on this point actually supports the Court's conclusion that his failure to pay the taxes was willful, because federal law requires trust fund taxes to be paid quarterly. During 2013 and into 2014, Dr. Donaldson willfully and knowingly caused or permitted other obligations of IMI to be paid while continuing to ignore IMI's past due and current obligations to the IRS, assuming that future contingent assets would cover this debt. The fact that his assumption proved incorrect does not constitute "reasonable cause" to relieve him of his responsibility for these taxes under § 6672, especially in light of his continued failure to pay over trust fund taxes after he admittedly became aware of IMI's prior failure to do so.[7] Dr. Donaldson's use of those funds to pay other creditors when he knew that delinquent taxes were owed

---

[7] Dr. Donaldson also argues that the payment of the BP Funds pursuant to the Notice of Levy constituted a voluntary payment, because Dr. Donaldson and IMI cooperated in the pursuit of those funds and agreed to the issuance of the Notice of Levy. The Court need not reach this issue, because it does not have the authority to reallocate those funds, but the Court also fails to see how funds paid over by a third party pursuant to a levy could ever be considered a voluntary payment by a taxpayer. See, e.g., Muntwyler v. U.S., 703 F.2d 1030, 1033 (7th Cir. 1983) (holding the distinction between voluntary and involuntary payment is based on the "presence of court action or administration action resulting in an actual *seizure* of property or money as in a levy.") (emphasis in original).

16

to the IRS establishes his willfulness, as a matter of law. Logal, 195 F.3d at 233.

## IV. CONCLUSION

The Court lacks the authority to reallocate prepetition payments applied to IMI's tax debts, because the Court does not have jurisdiction to determine a non-debtor's tax liability. The Court does have jurisdiction to determine Dr. Donaldson's tax liability. Dr. Donaldson is a responsible person who is liable for the TFRP amounts claimed by the IRS in its Proof of Claim, and no reasonable cause excuses Dr. Donaldson's willful nonpayment of IMI's trust fund taxes. Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the Objection (Dkt. # 110) is **OVERRULED.**

##END OF ORDER##